## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF PENNSYLVANIA

CARMEN CUPELLI,                              Civil Division

        Plaintiff,                          No.  12-1694

        v.                                  Judge McVerry

OFFICE OF CONTROLLER OF ALLEGHENY
COUNTY, and CHELSA WAGNER,
Controller, in her individual and official
capacities,

        Defendants.                         JURY TRIAL DEMANDED

## BRIEF IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### I. Introduction

Defendants, Office of Controller of Allegheny County and Chelsa Wagner, discharged Plaintiff, 67-year-old Carmen Cupelli, before Wagner even took office as Controller. (Plaintiff's Concise Statement of Material Facts ["PSMF"] ¶1). At the same time, Defendants also discharged eight other employees, seven of whom were older than age 50. (PSMF ¶2).  Defendants retained at least 74 employees who were at least six years younger than Cupelli, and only retained one employee older than Cupelli. (PSMF ¶3).  At the same time Wagner purportedly laid off these nine individuals, she also hired nine new employees, seven of whom were under age 50. (PSMF ¶4).

Wagner already knew all nine of these new employees, either because they worked on her political campaign for Controller; contributed to her campaign for Controller; supported her candidacy for Controller; worked for her in the Pennsylvania House of Representatives; and/or participated in political activities with her.  (PSMF ¶5).  Cupelli, on the other hand, did not support Wagner in her bid for Controller. (PSMF ¶6).  Wagner did not publicly post any of the new positions

for the nine people she hired before she became Controller. (PSMF ¶9).

While the letter discharging Cupelli cited the "2012 budget" as a reason for his discharge, Wagner admits the Controller's Office budget was not reduced from 2011 to 2012. (PSMF ¶7).  As a group, Defendants paid the newly-hired nine individuals approximately $160,000 more than they saved by discharging Cupelli and the eight other employees. (PSMF ¶8).

Cupelli brings a claim under 42 U.S.C. § 1983 against Defendants Office of Controller of Allegheny County and Chelsa Wagner, alleging they fired him because of his lack of political affiliation to Wagner, in violation of his rights under the First and Fourteenth Amendments to the United States Constitution. He also alleges Defendant Office of Controller fired him because of his age, in violation of the Age Discrimination in Employment Act, 29 U.S.C. §623(a)(1).

Defendants have moved for summary judgment on all claims, arguing no reasonable jury could find Defendants fired Cupelli because of his age or his lack of political affiliation to Wagner. However, viewing all the evidence in the light most favorable to Cupelli, a reasonable fact-finder could conclude Defendants fired him because of his age and/or because of his political affiliation. Therefore, as further explained below, Defendants' motion for summary judgment should be denied.

## II. Legal Standard

Summary judgment is appropriate only when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A dispute is genuine if a reasonable trier-of-fact could find in favor of the non-movant .... A dispute is material if it could affect the outcome of the case." *Lichtenstein v. UPMC*, 691 F.3d 294, 300 (3d Cir. 2012)(citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).

This Court must review the record in a light most favorable to the non-moving party, giving him the benefit of all reasonable inferences. *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 149-51 (2000); *Lichtenstein*, 691 F.3d at 300. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves,* 530 U.S. at 150 (quoting *Anderson*, 477 U.S. at 255).

Evidence of the moving party is to be given credence only when uncontradicted, unimpeached, and from disinterested witnesses. *Id.,* 530 U.S. at 151. "[W]hen drawing all reasonable inferences in favor of the non-movant the courts must disregard evidence the jury is not required to believe, including testimony of interested witnesses." *Hill v. City of Scranton*, 411 F.3d 118, 131, n. 22 (3d Cir. 2005); *id.*, at 129 n. 16.

"In an employment discrimination case, the burden of persuasion on summary judgment remains unalterably with the employer as movant. The employer must persuade [this Court] that even if all of the inferences which could reasonably be drawn from the evidentiary materials of record were viewed in the light most favorable to the plaintiff, no reasonable jury could find in the plaintiff's favor." *Doe v. C.A.R.S Protection Plus, Inc.*, 527 F.3d 358, 361 (3d Cir. 2008). Courts must be cautious when granting summary judgment to an employer where intent and credibility are issues, because credibility determinations are jury functions. *See Wishkin v. Potter*, 476 F.3d 180, 184 (3d Cir. 2007).

### III. Argument

### A.   Summary Judgment Should Be Denied as to Cupelli's Political Affiliation Claim.

Firing a pubic employee because of his political affiliation violates his First Amendment speech and associational rights. *See Rutan v. Republican Party of Ill.*, 497 U.S. 62, 72-78 (1990);

3

*Branti v. Finkel*, 445 U.S. 507, 511-520 (1980); *Elrod v. Burns*,  427 U.S. 347, 355-73 (1976). A government employer may not discharge an employee or make other decisions based on party affiliation or political support, unless the employer can show that party affiliation is an appropriate requirement for the position involved. *Rutan*, 497 U.S. at 75.  Moreover, "[a] citizen's right **not** to support a candidate is every bit as protected as his right to support one." *Galli v. New Jersey Meadowlands Commission*, 490 F.3d 265, 273(3d Cir. 2007);  *Stephens v. Kerrigan*, 122 F.3d 171, 176 (3d Cir. 1997)(emphasis added).

To prevail on a political affiliation claim, Cupelli need only show: (1) he worked for a public agency in a position that does not require a political affiliation; (2) he engaged in constitutionally protected conduct; and (3) his political affiliation, or lack of affiliation with Wagner, was a substantial or motivating factor in the adverse employment decision. *See Galli v. New Jersey Meadowlands Comm'n*, 490 F.3d 265, 272 (3d Cir. 2007); *Goodman v. Pa. Turnpike Commission*, 293 F.3d 655, 663-64 (3d Cir 2002).  If Cupelli makes this showing, the burden shifts to Defendants to prove, by a preponderance of the evidence, that they would have made the same decision absent the protected affiliation. *Goodman*, 293 F.3d at 664.

Here, while Defendants fail to address the above framework, they apparently concede the first prong: Cupelli worked for a public agency in a position that does not require a political affiliation. Indeed, Cupelli performed the duties he was assigned, with no independent discretion. (PSMF ¶26).  He had no responsibility for setting any County policies. (PSMF ¶27). He did not report directly to Controller Flaherty; rather, he reported directly to TAW Manager Stanley Kaczmorski, who reported to Assistant Deputy Arthur Victor, who in turn reported to Flaherty. (PSMF ¶25).  Under this set of facts, a reasonable jury could readily find Cupelli's position did not

require a particular political affiliation.

Again, Defendants do not specifically address the remaining two prongs of the political affiliation *prima facie* case set forth above.  However, they appear to challenge whether the First Amendment protects Cupelli's lack of support of Wagner, as well as whether that lack of support was a substantial or motivating factor in Defendants' decision to discharge him.

> **1.      Cupelli's right not to support Wagner is protected by the First Amendment.**

With respect to the second prong, Defendants appear to claim Cupelli did not engage in any First Amendment protected activity.  According to Defendants, Cupelli must show he engaged in affirmative political activity to state a *prima facie* case.  However, the Third Circuit has explicitly held "**the First Amendment ... protects an employee from discrimination for failure to support the winning candidate ... [The] First Amendment [also] protects an employee's failure to engage in any political activity whatsoever.**" *Galli*, 490 F.3d at 272-73 (citations omitted)(emphasis added).  Thus, a plaintiff may establish the second prong of the *prima facie* case by showing he failed to support the winning candidate or party, "even if because of a general antipathy toward, or disdain for, politics." *Id.* at 273.

In numerous other cases, the Supreme Court and Third Circuit have made clear that failure to support a particular candidate or party is constitutionally-protected conduct. For example, in *Branti*, two assistant public defenders alleged their employer was about to discharge them because they were Republicans.  *Id.,* 445 U.S. at 508.  They did not allege they engaged in any specific political activity, and  they were not asked to change their parties or to contribute to political campaigns. However, they still stated a claim for political affiliation discrimination because of the "coercion of belief that necessarily flows from the knowledge that one must have a sponsor in the

dominant party in order to retain one's job." *Id.* at 516. Likewise, in *Rutan*, four public employees alleged they suffered adverse actions because they were not members of the Republican party. *Id.*, 497 U.S. at 66-67.  Although they did not allege they engaged in any affirmative activity, the Supreme Court still held they stated claims for political affiliation discrimination. *See id.* at 709. As the Third Circuit has noted, "*Rutan* encompasses claims of political discrimination when an employer takes an adverse action because s/he does not want to fill employment positions that would otherwise be available to his or her supporters." *Stephens*, 122 F.3d at 176.

Following *Branti*, and even before *Rutan*, the Third Circuit rejected the precise argument Defendants make here.  In *Bennis v. Gable*, 823 F.2d 723 (3d Cir. 1987), two police officers alleged, *inter alia*, that they were demoted to make room for the mayor's political supporters. *Id.* at 725. Following a verdict in favor of plaintiffs, the employer argued "*Elrod* and *Branti* should not be extended to cover plaintiffs who were not demoted for political opposition; but rather, were demoted simply to make room for political supporter." *Id.* at 731. The Third Circuit disagreed, noting "an alternative view of a demotion to make positions available for political supporters is that the demotion thus reflects a failure to support." *Id.*  Thus, the Third Circuit held the district court properly charged the jury that the defendants could be found liable if they demoted the plaintiffs to make room for political supporters. *Id.*

Here, Cupelli advances the same theory set forth in *Bennis* and *Galli*. He claims Defendants fired him to make room for Wagner's political supporters.  Defendants cannot, and do not, dispute that Cupelli did not support Wagner's bid for Controller in the 2011 election. (PSMF ¶29).  As such, Cupelli has met the second prong of his *prima facie* case.

**2.      A jury could conclude Cupelli's lack of support for Wagner was a substantial or motivating factor in Defendants' decision to discharge him.**

To determine whether political affiliation was a substantial or motivating factor for an adverse action, the Third Circuit follows the general "pretext" or "causation" analysis of the framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).  *See Goodman*, 293 F.3d at 673; *Stephens*, 122 F.3d  at 180-81.  Here, a reasonable jury could conclude Cupelli's lack of political affiliation with Wagner was a substantial or motivating factor in Defendants' decision to discharge him.

**a.      A jury could find Wagner fired Cupelli to make room for her political supporters.**

Cupelli can show his lack of political affiliation with Wagner was a substantial or motivating factor in his discharge is by*, inter alia*, pointing to evidence that Defendants treated individuals outside the protected class more favorably. *See Fuentes v. Perskie*, 32 F.3d 759, 765 (3d Cir. 1994)(emphasis added). Here, a jury could find that every new hire was a political hire, and thus, those affiliated with Wagner were treated more favorably than Cupelli.

Joseph ("JJ") Abbott was Wagner's campaign manager for her campaign for Controller, and worked as a consultant on her campaign for the State House. (PSMF ¶¶57-58). Abbott had also worked on the Auditor General campaign for Wagner's uncle, Jack Wagner. (PSMF ¶58).  When Wagner took office, Abbott was hired as a policy specialist, without his position being posted for others to apply. (PSMF ¶¶49, 60-61). Abbott has continued to politically support the Wagner family, and was allowed to take leave to manage Jack Wagner's campaign for Mayor of Pittsburgh. (PSMF ¶64).

Joseph Asturi first met Wagner when he worked in the office of State Senator Jay Costa.

(PSMF ¶65).  Asturi then volunteered for Wagner's campaign for Controller. (PSMF ¶66).  He also

threw a fund-raiser for Wagner, and may have contributed to her campaign financially. (PSMF ¶67).

When Wagner took office, she hired Asturi as Government Relations Director. (PSMF ¶49).  As

noted above, Asturi acts in a liaison capacity, similar to that of Cupelli when he was employed by

the Office of Controller. *See* PSMF ¶68.

Lugenie Beckom knew Wagner through legislative community work. (PSMF ¶69).  When

Wagner took office, Beckom was hired as an administrative support person. (PSMF ¶70).

Nancy DiNardo worked for Wagner in her State House office, and ran her satellite office.

(PSMF ¶71).  When Wagner took office, she hired DiNardo as an Executive Assistant. (PSMF ¶49).

Seth Hufford contributed financially to Wagner's campaign for Controller. (PSMF ¶73).

When Wagner took office, she hired Hufford as Chief of Staff. (PSMF ¶49).

Wagner knew Brad Korinski to be supportive of her candidacy for Controller. (PSMF ¶75).

When Wagner took office, she hired Korinski as Chief Legal Counsel. (PSMF ¶49).

Heidi Nevala was Chief of Staff in Wagner's State House office for five years. (PSMF ¶77).

She also volunteered for Wagner's campaign for Controller. (PSMF ¶78).  When Wagner took

office, she hired Nevala as Community Relations Director. (PSMF ¶49). As noted above, Nevala

now performs some of the work that Cupelli performed at the Controller's Office, including

attending meetings and answering questions about property assessments. (PSMF ¶¶80-82).

Wagner first met Linda Piso while campaigning for Women for Obama. (PSMF ¶83).  Piso

then volunteered on Wagner's campaign for Controller, and contributed financially. (PSMF ¶¶84-

85).  When Wagner took office, she hired Piso as Human Resources Director. (PSMF ¶49).

Louis Takacs worked in Wagner's State House office prior to Wagner's election as

8

Controller. (PSMF ¶86).  Wagner knew Takacs to be supportive of her candidacy for Controller. (PSMF ¶87). When Wagner took office, she hired Takacs as Communications Specialist. (PSMF ¶49).

Wagner continued in her trend of political hiring after she took office. In February 2013, she hired Janice Chirdon, who worked in her State House office, and continued to run the office while it had no representative. (PSMF ¶¶97-98). Wagner also allowed Chirdon to take a leave of absence to work on Jack Wagner's mayoral campaign. (PSMF ¶100).  Although Chirdon only works part-time doing analysis and support work, she earns $38,0001 per year. (PSMF ¶¶99, 101).

As such, the undisputed facts show that Wagner had some sort of political connection to each new person who was hired, and also hired at least one person with whom she had a political connection after she took office.  From these facts, a jury could conclude Wagner wanted to make room for her political appointees in her hiring roster, and had to fire other employees to do so.

A memorandum from then-Deputy Controller Guy Tumolo dated November 29, 2011 supports this conclusion. *See* Tumolo Memorandum Dated 11/29/11, App. Ex. 13.   In this memorandum, Tumolo referenced Wagner's "intention of bringing eight personnel with [her]." *Id.* Tumolo then set forth the amount in the budget for personnel, and made some recommendations of how Wagner could bring on those eight people. *See id.*  From this memorandum, a reasonable jury could easily conclude the "eight people" referenced are eight of the nine political connections who were eventually hired.  The jury could then conclude that Wagner had already decided to hire her political supporters as of November 29, 2011, and thereafter fired Cupelli and eight others to make room for them.

Moreover, during Wagner's sole conversation with Cupelli, she told him she was **"loyal to**

**[her] people."** [PSMF ¶36]. A jury could conclude this statement meant Wagner was loyal to her political supporters, and would make room for them at the Office of Controller, even at the expense of eliminating existing employees like Cupelli. For all these reasons, a reasonable jury could easily find Cupelli's lack of political affiliation with Wagner was a substantial or motivating factor in Wagner's decision to discharge him.

**b.** **Defendants' "budgetary" reason has changed, and is false.**

In the letter discharging Cupelli, Wagner, through her counsel, claimed his discharge was "based upon the 2012 budget and the organizational needs of the office as envisioned by Ms. Wagner," as well as unnamed "other important factors." (Cupelli Discharge Letter, App. Ex. 1).

Defendants appear to have since abandoned the "budgetary" reason for discharging Cupelli, and now instead claim he was discharged because he did not add value to the office. If the reasons given for a termination do not remain consistent, beginning when proffered and continuing throughout the litigation, a jury can find pretext. *See Reeves*, 530 U.S. at 152; *Abramson v. William Patterson Coll. of N.J.*, 260 F.3d 265, 284 (3d Cir. 2001); *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 285 (3d Cir. 2000); *Smith v. Borough of Wilkinsburg*, 147 F.3d 272, 281 (3d Cir. 1998). Thus, a jury could find pretext from Defendants' change of reasons alone.

Moreover, Defendants' "budgetary" reason is demonstrably false. Wagner readily admitted that the 2012 budget was no lower than the 2011 budget. (PSMF ¶44). Indeed, the salaries of the nine people eliminated, including Cupelli, totaled $414,797.15. (PSMF ¶47). The salaries of the nine people hired at the same time totaled $575,368.87. (PSMF ¶51). Thus, Defendants actually spent $160,571.72 *more* on salaries after the alleged restructuring than it spent beforehand.

Additionally, Wagner also knew from Deputy Controller Tumolo that the Office had an

10

additional $323,453 in the 2012 budget for salaries, as well as $10,000 for legal counsel. (PSMF ¶40).  Therefore, Defendants could have hired many of the nine new hires from that excess budget, without even eliminating any of the nine discharged employees, including Cupelli.

In *Galli*, the Third Circuit held similar facts supported a finding of causation.  There, although eleven employees, including the plaintiff "purportedly were fired as part of a 'reorganization' to make the [employer] more efficient and cost-effective, it hired *eighteen* new employees in the year following these terminations." *Id.*, 490 F.3d at 269 (emphasis in original).  The plaintiff contended almost all of those new hires were political patrons of the new administration. *Id.*  The Third Circuit held "the supposed reorganization of the [employer], allegedly undertaken to promote economic efficiency, was not only curiously undocumented, but also undermined by its decision to hire even more employees (eighteen) than it fired (eleven) in the name of streamlining." *Id.* at 276.  *See also Azzaro v. County of Allegheny*, 110 F.3d 968, 974 (3d Cir. 1997)(holding jury could find pretext when plaintiff presented evidence that budgetary constraints did not compel her discharge).

Here, Wagner *immediately* hired the same number of employees she fired in the name of efficiency, and spent $160,000 more in the process. Thus, Defendants' "budgetary" reason is just as suspect here as in *Galli*.  Given this changing and untrue reason, a jury could disbelieve Defendants' proffered reasons for firing Cupelli, and instead conclude his political affiliation was a substantial or motivating factor in his discharge.

> c.    **Causation can be established through unusually suggestive timing.**

The Third Circuit repeatedly has held that causation may be established through unusually suggestive proximity between the protected activity and the adverse action. *Marra v. Phila. Hous.*

*Auth.*, 497 F.3d 286, 302 (3d Cir. 2007); *Fasold v. Justice*, 409 F.3d 178, 189 (3d Cir. 2005); *Jalil v. Avdel Corp.*, 873 F.2d 701, 708 (3d Cir. 1989).

In *Galli*, the Third Circuit noted "the odd timing" of the plaintiff's discharge and the hiring of her replacement, noting that the replacement was offered a job before she was even notified of her discharge. *Galli*, 490 F.3d at 277.  The Court held this timing was evidence of causation on a summary judgment record.  *See id.*

Here, Wagner discharged Cupelli the first chance she could.  Before she even took office, she notified him that he would be laid off effective her first day in office, January 2, 2012. (PSMF ¶43). Her nine new employees started working the day Wagner took office, showing they were hired before Cupelli was discharged.  *See* List of Hired Employees, App. Ex. 6.  Before Wagner even had time to give Cupelli a chance to prove his value to the office, she fired him and hired other people.  Thus, the timing between Wagner's learning of the employment of Cupelli and her discharge of him could not have been closer.  From this timing, as well as the other evidence cited herein, a jury could find Cupelli's lack of political affiliation with Wagner was a substantial or motivating factor in his discharge.

### 3.   Defendant cannot prove, on a summary judgment record, it would have fired Cupelli absent his lack of political affiliation to Wagner.

If Cupelli points to evidence from which a jury could find his lack of political affiliation to Wagner was a substantial or motivating factor in Defendants' decision to discharge him, the burden of *persuasion* shifts to Defendants to prove they would have fired Cupelli absent his political affiliation.  In other words, Defendants "may avoid a finding of liability by demonstrating by a preponderance of the evidence that it would have made the same decision even in the absence of the protected affiliation."  *Goodman*, 293 F.3d at 664.

12

When a defendant will bear the burden of proof at trial, summary judgment is inappropriate unless it can prove its affirmative defense so clearly that no rational jury could find to the contrary. *See Stanziale v. Jargowsky*, 200 F.3d 101, 108 (3d Cir. 1999); *Glanzman v. Metropolitan Management Corp.*, 391 F.3d 506, 514 (3d Cir. 2004).

Here, Defendants have failed to establish, as a matter of law and of fact, that they would not have fired Cupelli absent his lack of political affiliation with Wagner. Rather, as explained above, a jury could find from Wagner's hiring of political supporters, as well as through other evidence of causation and pretext, that Cupelli would still be employed if he supported Wagner politically. Therefore, Defendants' motion for summary judgment should be denied as to Cupelli's political affiliation claim.

**B.      Summary Judgment Should Be Denied as to Cupelli's ADEA Claim.**

**1.      Cupelli states a *prima facie* case of age discrimination.**

As Defendants note, claims under the ADEA may be analyzed under the *McDonnell Douglas* burden-shifting framework. *See* Def. Brief [Doc. 37] at 6. Defendants also correctly identify, and concede, the first three prongs of the *prima facie* case under the ADEA: (1) Cupelli was over the age of 40; (2) Defendants took an adverse employment action against him; and (3) he was qualified for his position. *See* Def Brief at 6-7.

However, Defendants incorrectly describe the fourth prong of the *prima facie* case. According to Defendants, Cupelli must show "he was replaced by an 'employee who was sufficiently younger to support an inference of discriminatory animus.'" Def. Brief at 6.

**a.      Defendants retained significantly younger individuals.**

The Third Circuit has repeatedly held that in a so-called reduction in force ("RIF") case, a

13

plaintiff is not required to show he was replaced. *See Anderson v. Consol. Rail Corp.*, 297 F.3d 242, 249 (3d Cir. 2002); *Showalter v. UPMC*, 190 F.3d 231, 234 (3d Cir. 1999); *Marzano v. Computer Sci. Corp.*, 91 F.3d 497, 507 (3d Cir. 1996); *Healey v. New York Life Ins. Co.*, 860 F.2d 1209, 1214 & n. 1 (3d Cir. 1988).  Rather, he need only show  "the employer retained 'unprotected workers.'" *See Showalter,* 190 F.3d at 234 (citations omitted).  In the ADEA context, this means the employer must have retained "significantly younger" individuals. However, those retained do not necessarily have to be under age 40.  *Id.* (citing *O'Connor v. Consol. Coin Caterers Corp.*, 517 U.S. 308 (1996)).  To satisfy the "significantly younger" standard, no "particular age difference that must be shown." *Showalter*, 190 F.3d at 236.  While a one year difference is not sufficient, a five year difference may suffice. *Id.*

Here, Defendants claim they reduced their workforce by engaging in a restructuring of the Support Services Division. (Defendants' Answers to First Interrogatories No. 10, App. Ex. 4). Indeed, Defendants argue in their brief that Cupelli was not replaced *at all*–not merely that he was not replaced by someone significantly younger.  *See* Def. Brief at 7-8. In other words, Defendants claim Cupelli's job was eliminated. For this precise reason, it would make no sense to require Cupelli to show he was replaced.   Instead, he need only show Defendants retained someone significantly younger.  *See, e.g., Showalter*, 190 F.3d at 234.

Here, Defendants clearly retained numerous individuals significantly younger than the 67-year-old Cupelli.  In the Support Services Division alone, Defendant retained at least six individuals between the ages of 40 and 55, or between 12 and 27 years younger than Cupelli: Chris McGuire (age 40); Sherry Kelly (age 45); Dennis Carver (age 48); Rita Martini (age 54); James McKnight (age 54); Kevin Wells (age 55).  (PSMF ¶¶92, 94). Indeed, Defendant only retained one person in

the *entire* Office of Controller older than Cupelli: Joseph Ross, age 70. (PSMF ¶95). In a list of Defendants' current employees, 74 out of 84 employees were born in 1950 or later, and were therefore at least 6 years younger than Cupelli. *See* List of Employees and Ages, App. Ex. 5). Thus, Cupelli easily establishes a *prima facie* case of age discrimination.

> **b.    A reasonable jury could find younger employees substantially replaced Cupelli.**

While there is no dispute that no one assumed *all* of Cupelli's duties after Wagner took office, a jury could find that younger employees took on a substantial portion of those duties.

Heidi Nevala, age 36, is responsible for going to almost every meeting where the Controller's Office sends someone. (PSMF ¶81).  For example, she goes to ALCOSAN  meetings and senior fairs. (PSMF ¶80). Cupelli also attended meetings on behalf of the Controller's Office, such as meetings for  Shuman Center, the Sport Authority, Port Authority, and County Council. (PSMF ¶23).  Now, if a constituent calls with a question about property assessments, Nevala would handle that call. (PSMF ¶82). Cupelli also handled all taxpayers' questions about property assessments. (PSMF ¶21).

Joseph Asturi, age 45, performs a liaison role, in which he attends County Council meetings and different committee meetings within County Council; acts as a liaison with the clerk of courts; and works with different judges and the jail advisory board. (PSMF ¶68). Likewise, Cupelli's job description identified one of his duties as "serves as liaison to various county boards and county committees as requested by management." (Real Estate Tax Investigator Job Description, App. Ex. 11).

Given the overlap in the job duties of Nevala and Asturi on the one hand, and Cupelli on the other, a reasonable jury could find Defendants assigned a large portion of Cupelli's job duties to

15

significantly younger individuals.  Cupelli's remaining job duties were eliminated, and certainly were not assigned to older individuals.  For this additional reason, Cupelli establishes a *prima facie* case of age discrimination.

###### c.    The ages of those discharged and retained also support an inference of discrimination.

The Third Circuit has made clear that "replacement" by an individual outside the protected class is not required to establish the fourth prong of the *prima facie* case, even when the employer has not discharged the plaintiff as part of a reduction in force.  *See Pivirotto v. Innovative Sys., Inc.*, 191 F.3d 344, 352 (3d Cir. 1999).  Thus, even if this case did not involve a reduction in force or restructuring, Cupelli still need not show he was replaced by someone significantly younger.  Rather, Cupelli need only show he was discharged "under circumstances which give rise to an inference of unlawful discrimination." *See Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981); *Jones v. Sch. Dist. of Phila*,  198 F.3d 403, 410 (3d Cir. 1999).

Here, a reasonable fact-finder could conclude the circumstances of Cupelli's discharge give rise to an inference of age discrimination.  Of the nine people discharged, all were over age 40; eight were over age 50; and four, including Cupelli, were over age 60.  (PSMF ¶46).  The average age of those discharged was 57.78.  (PSMF ¶48).

Of the nine people hired at the same time, all were under age 55; seven were under age 50; five were under age 40; and two were under age 30. (PSMF ¶49).  The average age of those hired was 39.55. (PSMF ¶53).[1]  Using their own common sense, reasonable jurors could easily see the 34-year-old Wagner's actions as an effort to eliminate a group of older employees, and replace them

---

[1]Defendants also placed a then-current County employee, Amy Griser, age 47, in the position of Deputy, after Deputy Guy Tumolo retired. (PSMF ¶54).  With the addition of Griser, the average age of those hired was 40.3.  (PSMF ¶55).

with much younger people.

For the foregoing reasons, Cupelli easily establishes a *prima facie* case of age discrimination.

**2.    A reasonable fact-finder could find Defendants' asserted reason for discharging Cupelli is pretextual.**

Essentially, Defendants claim they discharged Cupelli because the duties assigned to him by former Controller Flaherty did not add value to the Controller's Office. Assuming this reason meets Defendants' relatively light burden of stating a legitimate non-discriminatory reason, Cupelli can survive summary judgment by pointing to evidence "from which a fact finder could reasonably *either* (1) disbelieve Defendants' articulated reasons, *or* (2) believe  an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Fuentes*, 32 F.3d at 764 (emphasis added). Here, Cupelli can do both.

**a.    A jury could disbelieve Defendants' "budgetary" reason.**

As noted above with respect to Cupelli's political affiliation claim, Defendants initially claimed Cupelli's discharge was a layoff due to the 2012 budget.  *See* Cupelli Discharge Letter, App. Ex. 1.  Defendants have since abandoned this reason, which is, itself, evidence of pretext.  *See, e.g., Reeves*, 530 U.S. at 152; *Abramson*, 260 F.3d at 284.  Additionally, this reason is demonstrably false, because Wagner actually paid her new hires approximately $160,000 *more* than she paid the nine people she discharged, including Cupelli. (PSMF ¶¶51, 55).

Defendants gave Cupelli a clearly false reason during their first opportunity to state their reasons for discharging him, and then changed that reason once they were sued. Therefore, a jury could disbelieve Defendants' reasons for firing Cupelli.

17

>    **b.    Defendants did not discharge younger employees who were viewed by Wagner as not adding value to the office.**

Cupelli can show discrimination was more likely than not a determinative cause of Defendants' decision to discharge him by, *inter alia,* pointing to evidence that "the employer treated other, similarly situated persons not of his protected class more favorably." *Fuentes*, 32 F.3d at 765. As noted above, in an age discrimination case, Cupelli need only show that Defendants treated significantly younger individuals more favorably, rather than showing that those individuals were necessarily under age 40. *See, e.g., O'Connor*, 517 U.S. at 312.

Here, Defendants eliminated the entire Support Services division. (PSMF ¶89).  In other words, a jury could find Wagner did not believe the Support Services division "added value" to the Office.

However, Defendants did *not* eliminate all the employees who worked in the Support Services division. (PSMF ¶91).  Rather, as noted above, Wagner retained many of the employees in the Support Services division, and assigned them to other departments.  For example, Sherry Kelly, age 46, was listed in the same place on the organizational chart as Cupelli: the Support Services division; the TAW subdivision; and the Tax Lien branch. (PSMF ¶92).  Kelly was retained despite the elimination of the Support Services division. (PSMF ¶92).  Defendants also retained Support Services employees Chris McGuire, age 40; Dennis Carver; age 48; Rita Martini, age 54; James McKnight, age 54; and Kevin Wells, age 55, despite their division being eliminated. (PSMF ¶94).

If Wagner could restructure the duties of the office in a way to keep these employees retained despite eliminating their division, a jury could very well question why Defendants could not similarly restructure the office in a way to keep Cupelli employed.  Thus, a jury could conclude age

18

discrimination was more likely than not a determinative factor in Defendants' decision to discharge Cupelli.

        **c.**    **Defendants discharged other older employees in the Support Services division, while retaining and hiring younger employees.**

Cupelli also may meet his burden of discrediting Defendants' reasons by showing the employer "discriminated against other members of his protected class or other protected categories of persons." *Fuentes*, 32 F.3d at 765. As noted above, Wagner eliminated other older individuals in the Support Services division at the same time it discharged Cupelli, including Jerry Chiapinelli, age 65; Terrance Matuszak, age 64; and Stanley Kaczmorski, age 63. (PSMF ¶46).

At the same time, Defendants hired nine new employees: two of whom were in their 20's; three of whom were in their 30's; two of whom were in their 40's; and two of whom were age 52. (PSMF ¶49). The average age of those hired was 39.55, while the average age of those discharged was 57.78. (PSMF ¶¶48, 53).

Defendants claim Wagner's discharge of other older individuals is not relevant to a finding of pretext when "raw numerical comparisons ... are not accompanied by any analysis of either the qualified applicant pool or the flow of qualified candidates over a relevant time period." *See* Def. Brief at 14 (citing *Cridland v. Kmart Corp.*, 929 F. Supp. 2d 377, 388-89 (E.D. Pa. 2013); *Ezold v. Wolf, Block, Schorr & Solis-Cohen*, 983 F. 2d 509, 542-43 (3d Cir. 1992)).

Here, however, there is no "qualified applicant pool" to examine. Defendants did not post the new positions and seek qualified applicants to fill those positions. (PSMF ¶50). Rather, Wagner simply hired the younger individuals. Thus, it would be impossible to compare the ages of those hired to those in the applicant pool, when no such applicant pool existed. Moreover, the discharges and hires cited above all occurred during the same time period: when Wagner took office. The ages

19

cited above are not merely raw figures, but rather bear a direct relationship to the facts of this case. Given that the jury can consider more favorable treatment toward younger employees, as well as less favorable treatment toward older employees, *see Fuentes*, 32 F.3d at 765, the jury is certainly entitled to consider the evidence of the ages of the other affected employees in determining whether to believe Defendants' proffered reasons.

> **d.      Defendants hired a younger employee to perform Cupelli's former Payroll Clerk job.**

Approximately two and a half months after Wagner assumed office, Defendants hired an employee 12 years younger than Cupelli as a Payroll Clerk. (PSMF ¶96).  Cupelli had worked as a Payroll Clerk in the Office of Controller for the first 10 years of his employment. (PSMF ¶15).

Wagner claimed she did not consider Cupelli for another position in the office because she was not aware he was seeking another position, and was not aware of there being a need for the skills he had. (PSMF ¶45).  However, Defendants clearly had a need for a payroll clerk, and Cupelli had the skills necessary to perform that job.  Thus, a jury could wonder why, if Cupelli's discharge was a true "layoff," he was not offered the next available position for which he was qualified.

For all the foregoing reasons, a reasonable jury could conclude Defendants fired Cupelli because of his age.  Therefore, Defendants' motion for summary judgment should be denied as to Cupelli's ADEA claim.

### IV. Conclusion

For all the foregoing reasons, genuine disputes of material fact preclude judgment as a matter of law in favor of Defendants.  Because a jury should be able to resolve the disputed facts and determine whether Cupelli's age and/or political affiliation motivated Defendants' discharge of him, Defendants' motion for summary judgment should be denied.

Respectfully submitted,

**Samuel J. Cordes & Associates**

/S/ Christine T. Elzer
Samuel J. Cordes
Christine T. Elzer

Pa.I.D. #54874 (Cordes)
Pa.I.D. #208157 (Elzer)

245 Fort Pitt Boulevard
Pittsburgh, PA 15222
(412) 281-7991

Attorneys for Plaintiff

21

## CERTIFICATE OF SERVICE

I hereby certify on this 10th day of January, 2014, I served a copy of the foregoing **Brief in Opposition to Defendants' Motion for Summary Judgment** via the Court's electronic filing system upon the following:

James P. McGraw, III
Law Offices of Ira Weiss
445 Fort Pitt Boulevard, Suite 503
Pittsburgh, PA 15219

/s/Christine T. Elzer
Christine T. Elzer